Good morning, Your Honor. Stephen Morris on behalf of the appellant. Obviously we're sensitive to Your Honor's order regarding subject matter jurisdiction, and in that regard I would like to start off with the observation that in a 17-200 case, the focus is really not on damages for the plaintiff, but rather on disgorgement of profits from the defendant. So when we look at the amount in controversy, we're not focusing on damages from the plaintiff's side of defense. We're looking at disgorgement from the defense side. And what would that amount be in this case if you were to prevail? Or what are you claiming that amount is? It would be millions of dollars, Your Honor. How good would it be? It would be millions of dollars. This case has not been certified as a class action. No, Your Honor. Not yet. But one individual could get that kind of disgorgement? Yes, Your Honor. We have pled a common fund from which monies could be allocated to members of the class should this case go back for a determination on certification. But if it isn't certified, this one individual wouldn't have that amount. There wouldn't be the $75,000, would there? There could be, Your Honor, because in a 17-200 case, you can have disgorgement. Also, we have a declaratory relief cause of action as well as an unjust enrichment cause of action. So whether or not the case is actually certified as a class action would have a bearing on individual members' ability to recover gamut. I slipped into the word gamut. I want to stay away from that word. That's really a very – that's so interesting because that would mean that every unfair business practices state – every California state unfair business practices action that was brought by an individual, we would have diversity jurisdiction over because you would be asserting disgorgement in a common fund. I mean, the world would be discerning. I can't believe that's the law that there has to. Do you have any cases to cite to us? No, Your Honor. It's a wide-open area, surprisingly enough. Maybe it's too wide open under you. Perhaps so, Your Honor. And I do have a suggestion. To the extent that the focus is on the disgorgement of profits rather than on damages in 17-200 cases such that there would be a technical – You say 17-200 cases? Business and professions, section 17-200, yes, Your Honor. Of California? Yes, Your Honor. So if – if, say, for example, the plaintiff were to prevail and no class action, they're entitled to keep this millions of dollars? The plaintiff would not personally keep them. They could be distributed. And also, to the extent that we have pled declaratory relief, which requests, obviously, judicial determination as to the interpretation of this particular State Farm policy language, that language, if we prevailed, would then be interpreted in a different way by State Farm affecting millions of people. But I understand Your Honor's concern that you wouldn't necessarily want to see a slew of 17-200 cases suddenly pouring into the Federal court system. One suggestion could be that to the extent a defendant removed a State court 17-200 case, it could be a discretionary election to accept the case that would depend upon stipulation of the plaintiff. In other words, if both parties agreed, even though there was technical compliance with the amount in controversy, there might be some policy reason why the Federal system wouldn't want to have perhaps the – Stipulate through jurisdiction? We can't – no, technically not, Your Honor. Well, how do we get around that? Well, we could modify that rule in this context. In this – We can? Just – if it's a 17-200 case, we say we don't worry about stipulating through jurisdiction? Well, the world's our oyster, Your Honor. To the extent that we're here, we certainly have options. We've obviously litigated this case, and both parties have not challenged jurisdiction and have worked up this case for a year now. That's not going to help you if, in fact, we don't have jurisdiction. That's true. That's true. And obviously, we're very mindful of that, and we're very mindful of Your Honor's inquiry in that regard. Putting aside the risk of the floodgates argument, which someone could make, Your Honor, might be sensitive to. I'm just wondering whether there's – I mean, it's troubling that there's no case law on what the amount in controversy – how you determine the amount of controversy in a 17-200 case. There really isn't? I have – look, I have not found it. Counsel may have some additional citations for the Court. Because it's a disgorgement issue rather than a damages issue, generally, 17-200 cases are large cases. Generally, they are filed in a cross-action format, as our case is, and so it rarely crosses counsel's mind to think that it would be less than $75,000. Disgorgement to whom? That would be the question. Yes, Your Honor, to the members of the class. But there is no class. If there is one. But there isn't here. Not – that's true. Yes, there is not one here. We do know that you can't aggregate amounts that would be paid to individual class members to get up to the $75,000. That law is clear. We agree with that, Your Honor. And there's case law, obviously, on that point directly. And the Gibson case provides some guidance for us, but it does leave unanswered the question in a common fund situation where disgorgement really is the only issue rather than damages, what the Court does with that jurisdiction. And it may well come down to a policy decision. Well, I mean, you filed in State court, though, right? Yes, Your Honor. The case was removed from federal court, right? So whose burden is it to show that the case meets the merit and controversy requirement? It's the defendant's burden. All right. So why don't we get to the merits of your case? All right. We – we simply have a common interest, obviously, in being here. And on the merits, Your Honor, to be honest with you, we don't have anything new to bring to the Court that was not briefed. And the issue of the disjunctive – Well, it says, or. Yes. So how do you say that the interpretative is, and? Right. That's our position. 2A and 2B. Right. Yes, Your Honor. That's – we believe it's a simple question. If that question is reached, then we believe that it would be resolved in favor of the  And that's really our entire argument. Yeah. I think with that, I'll give up the rest of my time. All right. All right. Thank you, counsel. Good morning. William Zolch on behalf of Defendant State Farm Mutual Automobile Insurance Company. Let me speak to the jurisdictional issues if I can. I think the focus of the Court should be on the causes of – the cause of action, and really for unjust enrichment. And I think that's what hooks jurisdiction in in this case. The real question is whether the allegation of disgorgement into a common fund can be used by the Court, and whether the Court can use that to satisfy the non-controversy requirement. The – there is some case law on this subject involving unjust enrichment cases, which is the second cause of action here. There is a rule of Sellers v. O'Connell. They call it the Sellers Rule, a 701F, 2nd, 575, 6th Circuit, 1983 case, where it does indicate that although the general – although the Court may not aggregate separate and distinct claims, which is a rule observed here, aggregation is valid when two or more plaintiffs unite to form a single title or right in which they have a common and undivided interest. Is that the case here? Well, we think it is the case here, Your Honor. The – on the one hand, we have a plaintiff who is challenging a policy form that provides the same benefits to millions of policyholders, theoretically, throughout the State, and a change by this Court, for example, if this Court came down with a different formula, unlike maybe the analysis that was conducted in Paulson v. State Farm, but if this Court said another formula has to apply on how State Farm calculates its policy benefits, that will affect millions of policyholders and – who have a common interest in that particular language, because the language is common to these policyholders. And in – in Krieger v. Gaspt – So if there's a recovery, what happens? If they recover against you, what? I think what happens is – and they have pled a common fund, and they have pled that the profits or ill-gotten gains should go into this common fund. And what happens in that scenario is, yes, there will be certain policy benefits that were withheld that can be distinctly calculated to each policyholder, and that obviously can't be aggregated. But you have – because they've pled a common fund, you have a situation where – What is pleading a common fund? If it isn't a class action, what's a common fund? Well, they – they have pled a class action. It hasn't been certified, but they certainly pled it at this stage. Yeah. Okay. I – I think that that can be considered in terms of – But can you – can you remove before the class action is established, because you don't have a common fund? Well, they have pled the common fund. Well, I pled it, but it wasn't allowed. It hasn't been allowed yet, but the case was terminated in the pleading stage before it could be certified as a class action. Who terminated it? Terminated it. Who did? Who terminated it? The district court. It did? I thought – I thought you did by removing it. Well, we – we removed it from state court to district court, but the – That's the point. What point can you remove it? Before the class action, before there's any kind of an establishment of a possibility of a common fund? I think it could be removed before – Do you have any cases to that effect? I do have some cases, Your Honor, that one is involving Durant. Durant v. Service Master. It's 147F2nd744, decided May 11, 2001. That's a case that involved very similar facts as we have here, a class action where they – where they were seeking class certification, but I don't think it had been certified at that point. You say you don't think. Isn't that the crucial thing is whether it was or wasn't? I don't think it was certified, Your Honor, because the – it was removed to federal court, and then they made a motion to remand at the initial stage when it was first removed, as opposed to this stage where we're on an appeal. What court did that come out of? That came out of, I believe, the Eastern District of Michigan, Southern Division. But that – they had sought certification as a class, but I don't think it was certified at that point, Your Honor. That doesn't help us much for the fact that you don't think it was certified. It either was or it wasn't. I – I could sit down and read the opinion, but it – Well, that would be a good thing before you come to court, wouldn't it? Yes, it would, Your Honor. I have – I have read what I thought was the pertinent parts which – which match our case very clearly, which is that they are seeking a cause of action for unjust enrichment, pleading a common fund. And – and it had some very interesting analysis on – on how that common fund may be unallocatable at a certain point in time when they are dealing with class plaintiffs. Number one, there may be some class plaintiffs who do not claim a portion of the common fund, which is very typical in a class action context. And the – there's even a restatement provision on this, Restatement I, Comment E, on this discouragement issue. And the Court indicated that – that given the complaint's silence, whether any monies in the discouragement fund would be placed in an individualized manner, it appears from the face of the complaint that at that point, plaintiffs would recover per capita from the discouragement fund, regardless of any actual individualized losses each may have suffered. And under the rule of sellers, therefore, plaintiffs are seeking a common and undivided interest in the form of a common fund, and aggregation of the amount of discouragement is in order, thereby denying the motion to remand. So I think that would be helpful here, is that we have a common fund. Some portion can be allocated, but some portion, by its very nature, can't be because of the nature of the pleading we have here. If they – in addition, there's an additional argument I'd like to submit along this line, is that they are seeking discouragement of profit. They'll got gains from – obtained allegedly from this conduct. And by its very nature, how can the court apportion profit to any particular plaintiff? It's undivided, and it would be a common interest of all plaintiffs in that money, which would go into this common fund, theoretically. It can be assessed and used to meet the jurisdiction of the plaintiff. Kennedy. There's only one plaintiff, isn't there? Kennedy. There's only one plaintiff at this point. Kennedy. Yeah, okay. What about the merits? I really have nothing else to add in addition to the brief, Your Honor, if you have any questions. Well, why shouldn't your client reimburse Ms. Bakken for the attorney's fees and costs of getting a recovery against the first insurance company? Why shouldn't the – why shouldn't State Farm reimburse the client? Well, for the attorney's fees, the amount that she had to put out of pocket in order to get the recovery that you offset from the amount that you owed her under your policy. Well, it's – it's simply a case that the statute as well as the policy language clearly provides that the amount payable under this coverage shall be reduced by any amount paid or payable to or for the insured for bodily injury under liability coverage. And – Well, it wasn't payable or paid to – only the net was really paid to them, wasn't it? Well, I don't – I don't think you can say that, Your Honor, because a person receives the benefits of – of that payment. Well, so they – They would pay their attorney fees. So did State Farm receive the benefit? State Farm receives whatever the offset is, the net benefit of that. Yes, they received the net benefit of that as a credit against the amount that's owed under the uninsured motorist coverage. It's hard for me to see why paid or payable to them is not what they actually received after having to pay the attorney's fees and the expenses. The – that would be the difference between saying it was received versus saying it was paid or payable to. I think when a – when a person receives a personal injury award and they – they wouldn't think that the money is not paid to them, that it's paid straight to the attorney. It comes to them, and then they pay the attorney out of the proceeds of that. Doesn't the attorney have a lien? The attorney certainly has a lien, but it's only a lien on the proceeds that the plaintiff receives. It's not a lien that they can assert before the plaintiff even has the right to receive the money. So I think it has to be – the money has to be paid to the plaintiff in that way, too. Well, if it's a lien, it could be received directly from the court. If the – yeah, typically, the lien would be asserted and the check would be made payable jointly to the lawyer and the plaintiff, which is the typical practice in California. But the money typically is not paid directly to the lawyer. The lawyer has a lien. They can assert it, but the plaintiff can challenge it. And the only right that the plaintiff and the leverage the plaintiff would have to challenge that would be to say, we have – I have the funds and I don't think you ought to get that fee. I think your contract may be different. There may be all sorts of things that would come into play if the plaintiff wasn't able to receive the funds directly. I realize that time is running, but I wonder if I could ask a few more questions. Oh, yeah, go ahead. I actually have one, too. In interpreting 2A and 2B, how do you get around the fact that it has or between them, not and? I don't get around the fact. I think that's perfectly permissible to have the or there, and it's provided by statute. So the or means what, then? Or is between the two? Or means you look at 2A, and we don't even get to 2B in our scenario. We go right down to 6A – to 6B – I'm sorry, 6A. So I'm sorry, Your Honor, I don't think we even get to 2A in our scenario. We look at what's offset for workers' compensation, and then we look at what's offset for the liability payment by a third party. And then we look at what's offset for the liability payment by a third party. So I'm sorry, Your Honor, I don't think we even get to 2A in our scenario. Liability of third parties. What what does 2A mean? It's really based. That's based on a different insurance code section. One one five point two H2 offsets payments made under the liability portion of the insurance own policy. OK. That's that's what we're focusing on there. It really has no application for liability payments made by a third party TORP, either under their own insurance policy or by their own cash payment. So what does 2A cover? 2A covers liability payments made under liability portion of the insurance own policy. Well, there would be no way that this this party would have recovered any bodily injury under her own policy. That's true. There wouldn't be in this. Well, that would never be the case. The insured is never going to collect any money under the liability part of their policy. And I think that's your argument.  I think that there are some situations where the insured would. Well, name one. I think I cited a number of examples on page 10 of the brief where the policy does refer to various payments that it could be made to the insured under the liability coverage. Liability usually means you're liable to someone else. That's true, your honor, but that the payment would be made under the state farm coverage for that payment to somebody else. Payment for bodily injury under liability. That's right. But it wouldn't be paid to the insured. It's my point. Not in this scenario. It's definitely or any scenario that I can conceive of. But because it's liability means liable to somebody else. Definitely not. And that paragraph definitely would not apply under this scenario. Well, let me give you a construction that I would see would be possible from the policy is that you elect between bodily injury for the reduction or workman's compensation. And if bodily injury is elected under the or then you look down to 6A and see what the limits of that is. Why wouldn't that be possible? I just don't think that would be consistent with the formula that's set out in the insurance code. Well, I guess the point that that the players are making is that we're not interpreting the insurance code because you can write a policy that provides greater coverage than the insurance code. And it looks to me like this does. I don't think it does, your honor. I think it tracks in each portion of this policy, each paragraph, 2A, B, 6A and B do track specific sections of the insurance code. Each paragraph relates to a specific insurance code provision as well. And that's all State Farm is following is the formula laid out by California law. And it's and as the court indicated in State Farm v. Paulson, it applied this very same formula that we're here today using. In that case, to find that the offsets were permissible for both the liability payment by a third party tort pleaser as well as the workman's compensation. I could sure see that would be the case if it said and instead of or between well, and 2A and 2B. Yeah, but I just don't think that 2A applies in this in this context. It's very clear that that's a reference to liability coverage under the insurance policy, which has no application here, as you indicate. It just doesn't have any application whatsoever. You just have to go to 2B to find the worker's compensation offset. And then you go to the clear statutorily required and State Farm mandated policy requirement under paragraph six to find the other offset. Well, I think it has applicability if reading it as I indicated, if you elect between the two and you elect bodily injury, you look down to 6A and determine what the limits of that is. If there were an and in between there, you could you would look down for the bodily injury part for the limitation, but it would also include the workman's compensation. Well, I just look at it, Your Honor. I would look at I would see if I would look at 2A and say, okay, is there any offset for bodily injury under the liability coverage? The liability coverage is what the insured has. There was no payment for under the liability coverage of the insured zone policy. So I would drop down to 2B at that point and say, well, there is an offset for a payment under worker's compensation, so that applies. Then I would go down, are there any other offsets then? Are there any other payments to the insured that would be offset in addition to that? And, yes, the insured received a settlement from a third-party court feasor under that third part, under the liability coverage of that third party's policy, not under the liability coverage under the State Farm Policy. And then it would come into the offset, into paragraph 6, that would simply apply at that point, one or the other, but they would apply at that point. It's a very commonly assessed formula in the insurance practice on how the offsets are, and they can be cumulative. It's condemned by statute as well as the policy language. The following up on Judge Head's question, though, you say that 2A would, you know, apply for bodily injury for which your insured was liable, but that seems inconsistent with the fact that you're talking about, that comes under the heading of limits of liability under coverage U, and coverage U is uninsured motor vehicle coverage. So there really isn't any situation where 2A would apply under the limits of liability for which your insured was liable, but that doesn't seem to be a consistent case for the uninsured motor vehicle coverage that we're talking about, right? Doesn't that seem inconsistent? I'm not sure that is particularly applicable in this case, but it's the case. Potentially there could, Your Honor, and I may be at a loss right now to come up with some specific examples, but, for example, if there was a passenger who received a payment under the liability coverage of the insured driver's vehicle that they were driving as a passenger, they received a liability payment under that insured's coverage, that's where, for example, they sue their driver. Right. But if they were suing their driver, their driver would be liable, right, they would have a finding of liability, so why would they be recovering under this coverage for the liability of the insured? The driver's liability coverage may provide some payment to the passenger's claim, for example. All right. This is a little abstract. It is abstract, I know, but that would be a scenario where the passenger would have an uninsured motor or underinsured motorist claim, potentially, they may not receive full compensation by the driver's payment of the liability coverage, but that would be offset at this point, under this particular coverage, that would be an offset to their recovery under, if they made an underinsured motorist claim. All right. Let me just go to one other issue. You know, we were talking about the offset of attorneys' fees that were incurred. This policy talks nothing, addresses not at all the question of whether the out-of-pocket costs incurred by Ms. Bakken to make, get the initial recovery should be equitably apportioned between you and Ms. Bakken. There's no language in this policy that addresses that issue. And what I'm wondering is, is it a business practice and policy of State Farm never to always include the amount of attorneys' fees in their offset? I think it's the practice of the entire insurance industry to look at the total payment to the insured from the third party's office. As the offset. The reason I'm asking that is, of course, that the 17-200 claim might have viability if we were to say that that was an unfair business practice under the law of equitable distribution of the costs. So there might be a claim under 17-200. If that's considered an unfair business practice, that's alleged. Well, is it alleged here? I think that is. I think it is alleged here. Yeah. I just don't think that that would be an unfair business practice because of the way that case law has interpreted that. And certainly the insurance industry interprets it that way. They simply look at the payment received by the insured by a third-party tortfeasor as an offset. How much money are we talking about that's in dispute between the parties, setting aside the 17-200 claim? Setting aside the discouragement. Right. Setting aside that. We're really talking about less than $6,000. Well, you know what I see? I see three alternatives here. I see one you could win. I see when you might win on some part of it. And we might decide that the attorney's fee should be at least equitably apportioned, in which case that might cast doubt upon the business practice of you and the entire insurance industry in not doing that, especially given that your policy doesn't speak to it. Or we might dismiss this whole thing for lack of jurisdiction. Why don't you take some time and talk about whether or not you should resolve this $6,000 matter before we issue a ruling? I would love to do that. We have been through a mediation by a very competent mediator from this court. And he's offered to talk with us at any time about resolving this case. So we would be happy and sure to discuss it. But I said, but your state, your client won't. It's taking a stand. Oh, I'm not. I'm not saying we're taking a stand here at all. I think you should advise your client about what's gone on this hearing. First of all, that it's only supposed to be 20 minutes. And you've now been answering questions for 35. So there's a lot more issues here than perhaps you thought were on the table. So anyway, why don't we defer submission of this case for 10 days and you to talk and talk to your clients and send in a joint letter saying whether or not the settlement discussion has been productive. And then we'll proceed from there. Is that acceptable? Yes, you can ask. They can indicate whether they wish to have our mediator help them. We haven't heard the other side, have we? He's been nodding his head. Oh, OK, I didn't get to hear him. Yeah, I'm sorry. He was going like this, so I took it as a yes. I see. OK. All right. So 10 days from today, we'll hear from you as to whether you would like the services of our mediator, sell the case on your own or whether you just want us to proceed to decide it.  All right.
judges: Hug, B. Fletcher, Wardlaw